JOSEPH ROY v. DULUTH & IRON RANGE RAILROAD COMPANY and
Others.[1]

November 5, 1897.

69   547
74   138
69   547
86   322

Nos. 10,642, 10,643—(62, 81).

Public Land—Rights of Homesteader—Adverse Claims—Purchaser
with Notice.

The plaintiff, a qualified homesteader, settled upon a quarter section of
the public lands as a homestead, duly made application to enter the same,
and tendered the fees therefor. There was no adverse claim to the land
except a pretended claim of the state that it was swamp land, but in fact
it never was such. His application was refused by the local land office,
on the ground that the land inured to the state under act of congress of
March 12, 1860, and he appealed from such decision and duly instituted a
contest with the state. While his appeal and contest were pending and
undetermined in the land department, a patent for the land, by mistake
and inadvertence, was issued to the state, and thereafter the state con-
veyed the land to the defendants, who then had notice of the rights of the
plaintiff thereto. He has resided on the land as his home ever since his
entry, and has performed or tendered performance of all acts necessary
under the homestead laws to complete his title. *Held*, that he is, as
against the defendants, the equitable owner of the land, and entitled to
judgment barring them from asserting any title to the land adverse to
him.

Separate appeals by defendants, the Duluth & Iron Range Rail-
road Company and John Megins and Moses D. Kenyon, from a
judgment of the district court for St. Louis county, entered pur-
suant to findings by Ensign, J. Affirmed.

*Draper, Davis & Hollister*, for appellant the Duluth & Iron Range
Railroad Co.

Whether the lands were swamp lands or not was a question of
fact to be determined by the land department. The decision of that
question of fact was within the exclusive jurisdiction of the land
department, and cannot be impeached or reviewed by the court. A
court of equity is not precluded from inquiring into the decision
of the land department on the ground of fraud or mistake of law,

[1] Reported in 72 N. W. 794.

but neither fraud nor mistake of law is found in the case at bar. Johnson v. Towsley, 13 Wall. 72; Warren v. Van Brunt, 19 Wall. 646; Shepley v. Cowan, 91 U. S. 330; French v. Fyan, 93 U. S. 169; Moore v. Robbins, 96 U. S. 530; Marquez v. Frisbie, 101 U. S. 473; Vance v. Burbank, 101 U. S. 514; Quinby v. Conlan, 104 U. S. 420; Smelting v. Kemp, 104 U. S. 636; Steel v. Smelting, 106 U. S. 447; Baldwin v. Stark, 107 U. S. 463; U. S. v. Minor, 114 U. S. 233; Ehrhardt v. Hogaboom, 115 U. S. 67; Lee v. Johnson, 116 U. S. 48; Wright v. Roseberry, 121 U. S. 488; Cragin v. Powell, 128 U. S. 691; Knight v. U. S., 142 U. S. 161; U. S. v. California, 148 U. S. 31; Barden v. Northern, 154 U. S. 288; Catholic v. Gibbon, 158 U. S. 155.

*Hadley & Armstrong*, for appellants John Megins and Moses D. Kenyon.

If in this case nothing remained to be done but the ministerial act of issuing and delivering the patent, there could be no doubt of respondent's right to bring the action. The question is, has he any such rights before he has fully performed all the conditions necessary to entitle him to a patent? A settlement on the land may give the occupant some standing before the land department in case the government offers the land for sale, but confers no such vested interest in the property as to deprive congress of the power to devest it by grant to another party. Yosemite Valley Case, 15 Wall. 77; Cornelius v. Kessel, 128 U. S. 456; Bogan v. Edinburgh, 27 U. S. App. 346; American v. Hopper, 29 U. S. App. 12; Red River v. Sture, 32 Minn. 95; Hartman v. Warren, 76 Fed. 157; Deweese v. Reinhard, 19 U. S. App. 698; New Dunderberg v. Old, 79 Fed. 598.

*John Jenswold, Jr.*, and *John Brennan*, for respondent.

The issuance of a patent for these lands to the state as swamp lands through a mistake of the land department confers on the state nothing but the bare legal title, and its grantees take with notice of such mistake and of respondent's rights. They therefore stand before the court stripped of all equities, resting their claims solely on a patent which issued by mistake. A court of equity, where injustice has been done, will inquire into the facts as well as the law, notwithstanding the decisions of the land department. Cunningham v. Ashley, 14 How. 337; Linsley v. Hawes, 2 Black, 554; Bar-

nard v. Ashley, 18 How. 43; Lytle v. State, 9 How. 314; State v. Bachelder, 1 Wall. 109, 115; Shepley v. Cowan, 91 U. S. 330; Moore v. Robbins, 96 U. S. 530, 535; Railroad v. Smith, 9 Wall. 95. The respondent, by what he did on this land, acquired a right to be preferred in the acquisition of the land, and, with the law properly administered before the department, would have acquired title thereto. This is all that it was necessary for him to show. Ard v. Brandon, 156 U. S. 537; Shepley v. Cowan, 91 U. S. 330; Sampson v. Smiley, 13 Wall. 91; Morrison v. Stalnaker, 104 U. S. 213; Linsley v. Hawes, 2 Black, 554; Cunningham v. Ashley, supra; Williams v. U. S., 138 U. S. 514; Moore v. Robbins, 96 U. S. 530, 535; Lytle v. State, supra; Trepp v. Northern Pacific, 1 Land D. 396; Lansdale v. Daniels, 100 U. S. 113; Johnson v. Towsley, 13 Wall. 72; Schmidt v. Stillwill, 1 Land D. 177; Meilke v. Young, 2 Land D. 245; Doten v. Derevan, 3 Land D. 254; Gardner v. Snowder, 3 Land D. 257, note; Grant v. McDonnell, 18 Land D. 373.

Counsel for the appellants Megins and Kenyon argue that, after a right to a patent to lands has become vested in a purchaser or pre-emptor, the same are segregated from the public domain and are no longer subject to entry. This principle has no application to the case at bar. Neither respondent nor appellants acquired a vested right as against the government, before the patent issued. The contest is not between respondent and the United States, but it is between private parties; and the question is, which was the first in time in the commencement of proceedings for the acquisition of title. The plaintiff, by his settlement, cultivation, improvement of and residence on the land, his application to enter the same and his contest of the state's claim thereto, acquired a right to be preferred in its acquisition, and with the law properly administered would have acquired title thereto, and hence can hold appellants Megins and Kenyon trustees of the legal title. Act Cong. May 14, 1880, § 3; Lytle v. State, 9 How. 314, 334; Bisson v. Curry, 35 Iowa, 72. Plaintiff cannot be prejudiced by the erroneous acts of the land officers. Ard v. Brandon, 156 U. S. 537; Shepley v. Cowan, 91 U. S. 330. An application to enter is equivalent to an actual entry, if it is wrongfully rejected. Goodale v. Olney, 12 Land D. 324; Shepley v. Cowan,

supra; Cunningham v. Ashley, supra; Lytle v. State, supra; Whitney v. Taylor, 158 U. S. 85, 96; Lansdale v. Daniels, 100 U. S. 113.

START, C. J.

Action to determine adverse claims to real estate. Judgment for the plaintiff, from which the defendants appealed.

The unquestioned facts of this case, as found by the trial court, are these: The plaintiff, a qualified homesteader under the laws of the United States relating to homesteads, in good faith and with the bona fide intention of acquiring title thereto under such laws, settled and established his residence on the quarter section of land described in the complaint herein. He has ever since maintained a dwelling house thereon, improved and cultivated the land, and been in the actual and exclusive possession thereof. At the time he so entered and settled upon the land, a plat of the survey of the township in which it was situated had not been filed in the local land office at the city of Duluth, the office for the land district within which the land in question is situated. On July 2, 1883, after the filing of such plat, the plaintiff went to the proper local land office for the purpose of entering the land as a homestead, pursuant to his settlement thereon, and requested the proper officers to make such entry; whereupon they informed him that a mistake had been made in the survey, protests had been filed against it, that it was unnecessary for him to then file on the land, and advised him not to do so until the protests were determined. The plaintiff, being ignorant of the laws, rules, and regulations relating to the disposition of the public lands, relied upon such representations and acted upon such advice, returned to his home and continued to occupy and improve the land without then filing upon it.

The land never was swamp, wet, overflowed or unfit for cultivation, but the whole thereof was at the time of the passage of the swamp-land-grant act of March 12, 1860,[2] high, dry, and fit for cultivation, except four or five acres thereof. On August 5, 1884, the plaintiff learned that his land was claimed by the state of Minnesota as swamp land, and thereupon and on the same day, he duly made application to enter the same as a homestead and tendered the

[2] 12 St. 3.

fee for making such entry to the proper local land officers.   There was then no adverse claim to the land except the pretended claim of the state to it as swamp land.   The land officers refused plaintiff's application to enter the land on the ground that it inured to the state under the act of congress of March 12, 1860, and his application was not made within three months after the filing of the township plat in the local land office.   On the next day the plaintiff duly filed in such land office his affidavit of contest against the claim of the state, duly corroborated by two witnesses, to the effect that the land was not swamp or overflowed land and unfit for cultivation, but that the whole thereof was high, dry and fit for cultivation except four or five acres thereof.   On August 26, 1884, he appealed to the commissioner of the general land office from the rejection by the local land officers of his application so to enter the land, which appeal, with the affidavits, were on the same day transmitted by the local officers to such commissioner, and were duly filed by him on September 1, 1884.

On January 23, 1885, while the plaintiff's appeal from the rejection of his application to enter the lands as a homestead and his contest with the state as to its claim that the land was swamp land were pending and undetermined in the general land office, through mistake and inadvertence, the land was patented to the state.   The state, by its deeds dated March 2, 1889, and January 5, 1891, respectively, conveyed the land to the defendant the Duluth & Iron Range Railroad Company, which by warranty deed thereafter conveyed to the defendant Megins the south half of the quarter section, who conveyed an undivided half of the same to the defendant Kenyon. Each and all of the defendants, when they respectively took their conveyances of the land, did so with notice of plaintiff's right, claim, and interest therein.

As a conclusion of law, the trial court directed judgment for the plaintiff, establishing and decreeing him to be the equitable owner of the whole quarter section, and that the defendants and all persons claiming by or under them, or either of them, be forever barred from having or claiming any right to the land adverse to the plaintiff.

Do the facts found justify this legal conclusion?   This general

question is the only one which the record presents for our consideration. The defendants claim that it must be answered in the negative. In support of the claim they urge:

1. That the plaintiff, by settling on the land as a homestead and offering to file thereon, and by the other proceedings taken and acts done by him, as disclosed by the findings, did not acquire any equitable interest in the land or place himself in a position to attack the title of the state and its grantees; that he has not entered the land or paid for it, that there was no privity between him and the United States when the latter patented the land to the state, but that he was a stranger to the title; hence his only remedy is by an action by the United States to cancel the patent, and, when that is done, prosecute his appeal in the land department.

It is unnecessary to refer to or review the authorities cited by the defendants in support of this claim, for the supreme court of the United States has decided this precise question against them. Shepley v. Cowan, 91 U. S. 330; Morrison v. Stalnaker, 104 U. S. 213; Ard v. Brandon, 156 U. S. 537, 15 Sup. Ct. 406. The case last cited was an action of ejectment for the recovery of a certain 80 acres of land which had been patented in 1873 by the United States to the Missouri, Kansas & Texas Railway Company, and had been conveyed by the latter to the plaintiff. The defendant's claim to the land was, in effect, that he settled on it in June, 1866, as a homestead, and in July of the same year made application to the proper local land office to enter the land as a homestead, and tendered the fees therefor. This was refused on the ground that the land was within the limits of the railway grant, although at that time the land had not been withdrawn from settlement. This was afterwards done and the land was conveyed to the railway company. The defendant continued in possession of the land, cultivating and occupying it as his homestead. The district court of Kansas, where the action originated, gave judgment for the plaintiff, which was affirmed by the supreme court of the state. On writ of error the supreme court of the United States reversed the judgment. That court, approving and following Shepley v. Cowan, supra, held in effect that the defendant, having done all in his power to secure the land as his homestead and complied or tendered compliance with all of the provisions of the homestead

law necessary to complete his title to the land, and having failed to acquire the legal title through no fault of his own but through the wrongful action of the land officers, had a prior equitable claim to the land superior to the claims of the railway company or its grantees, which he might assert against them although they held the patent title.

In the case at bar, if, as the trial court found, this land was not swamp land, it was subject to entry and settlement under the homestead laws of the United States, and if, as the court also found, a patent of the land was issued to the state by the mistake and inadvertence of the land department, it follows from the other facts found that the plaintiff, whatever his rights against the United States may or may not have been, is the equitable owner of the land, as against the state and its grantees, who hold the naked legal title acquired by reason of such mistake with notice of his equities.   According to the findings of fact in this case, the plaintiff did everything in his power to perfect his title.   He in good faith performed or tendered performance of all acts which, under the homestead laws, were essential to complete his right to the land, and he was only prevented from securing the legal title thereto by the wrong, mistake and inadvertence of the land officers.   Such being the case it falls within the familiar rule that, where a party acquires, with notice, the legal title to real estate which of right belongs to another, he holds the title in trust for the rightful or equitable owner, and a court of equity will enforce the trust according to the right of each particular case.

2. The defendants further urge that the land department, when it issued the patent to the state, decided, as a question of fact, that the land was swamp land, and that this decision cannot be reviewed by the court, except on the ground of fraud, error of law, or mistake of fact, and that the finding in this court that the patent was issued through mistake and inadvertence is not sufficient to take the case out of the general rule.

It cannot be doubted that, in the administration of the public land system of the United States, questions of fact (such as whether a certain tract is or is not swamp land) are for the consideration of the land department, and its decision thereon is final, except in cases

of fraud, mistake of fact, or error of law. In cases falling within the exception its decisions may be reviewed by the courts.

It is contended by the defendants that the finding in this case that the patent was issued by mistake and inadvertence is not sufficient "to warrant the court in setting aside the patent," for there is no finding to the effect that there was any mistake or fraud on the part of the land department in finding that the land was not swamp land and not subject to private entry. The trouble with this contention is that there is nothing in the findings of the trial court for it to rest upon. There is no finding, direct or indirect, that the land department ever passed mistakenly or otherwise upon the question whether the land was swamp land or not. On the contrary, the necessary inference from the facts found is that the question never was passed upon by it, and that, by mistake and inadvertence, it issued the patent without passing upon the question. The clerical act of issuing the patent by inadvertence cannot be regarded as a decision, within the rule as to the review by the courts of the decisions of the land department. The patent having been issued by mistake, the act was not a decision but an error. Even if the patent had been deliberately issued while the plaintiff's contest and appeal were pending and undetermined, it would have been either a fraud or an error of law, which the courts could review. It does not appear from the findings that, when the plaintiff made his first application, the state had made any claim to it; but it is expressly found that, when he made the second application, there was no adverse claim to the land, except the pretended claim of the state that the land was swamp land, and that, in fact, the land was all high, dry and fit for cultivation, except three or four acres, and that, when the patent was issued by inadvertence, the validity of the claim of the state and the rightfulness of the rejection of his application were pending and undetermined. The findings, taken as a whole, show that the patent was issued through an error of law, mistake, and inadvertence on the part of the department, and fully sustain the judgment.

Judgment affirmed.